IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 21-cv-00681-PAB-KAS

TIMOTHY SPIKES, and
SYLVIA MONTOYA,

    Plaintiffs,

v.

CAR TOYS, INC., a Washington corporation registered to do business in Colorado,
GEO SECURE SERVICES, LLC, a Florida limited liability company registered to do business in Colorado, and
BRIGITTE DOLAN, in her individual and official capacity,

    Defendants.

---

# ORDER

---

This matter comes before the Court on the Motion to Dismiss on Behalf of Defendant GEO Secure Services, LLC [Docket No. 90].  The Court has jurisdiction over plaintiffs' federal law claim pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over plaintiffs' state law claim pursuant to 28 U.S.C. § 1367.

## I.   BACKGROUND[1]

On May 23, 2019, plaintiffs Timothy Spikes and Sylvia Montoya were indicted and arrested on federal criminal charges in Case No. 19-cr-00264-WJM.  Docket No 86 at 7, ¶ 56; *see also* Docket No. 90-1 at 2-6.  While in pretrial detention, Mr. Spikes was housed at a facility owned and operated by defendant GEO Secure Services, LLC

---

[1] The facts below are taken from plaintiffs' Second Amended Complaint and Jury Demand ("complaint"), Docket No. 86, and are presumed to be true, unless otherwise noted, for purposes of ruling on defendants' motions to dismiss.

("GEO").  Docket No. 86 at 8, ¶ 61.  GEO is a private company that operates a detention

facility in Aurora, Colorado that houses federal detainees and prisoners pursuant to a

contract with the United States Marshals Service.[2]  *IGA- Aurora Detention Facility,*

*Colorado Intergovernmental Agreement*, *U.S. Marshals Service,*

https://www.usmarshals.gov/resources/publications/iga-aurora-detention-facility-

colorado-intergovernmental-agreement.  While Mr. Spikes was housed at the GEO

facility, GEO employees, including defendant Brigitte Dolan, "intercepted, used, and

disclosed confidential communications" that Mr. Spikes had with his attorney without Mr.

Spikes' consent.  Docket No. 86 at 8, 10-11, ¶¶ 62-64, 82-92.  GEO's assistant facility

administrator, Dawn Ceja, "provided to the U.S. Department of Justice a report of all

calls between Plaintiff Spikes and his defense attorney" and a different GEO employee,

Dave Jones, "provided three attorney client privileged recorded phone calls" to the U.S.

Department of Justice.  *Id.* at 9, ¶¶ 75-76.  Ms. Dolan "passed information she obtained

from the attorney client privileged phone calls she obtained . . . to Sergeant Foster of

---

[2] The complaint makes the conclusory allegation that GEO derives its authority to operate the facility where Mr. Spikes was held from the State of Colorado.  Docket No. 86 at 2, ¶ 6.  However, the Court takes judicial notice of the fact that GEO houses federal detainees in its facility pursuant to a contract with the United States Marshals Service.  *See Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006) (holding that a court may take judicial notice of facts which are a matter of public record when considering a motion to dismiss); *O'Toole v. Northrop Grumman Corp.*, 499 F.3d 1218, 1225 (10th Cir. 2007) (noting that courts may take "judicial notice of factual information found on the world wide web"); *Rahimian v. Blinken*, 2023 WL 143644, at *2 n.1 (D.D.C. Jan. 10, 2023) (noting that courts "may take judicial notice of information posted on official public websites of government agencies").  Moreover, plaintiffs and GEO both appear to understand GEO to have contracted with the federal government, not the State of Colorado.  *See* Docket No. 90 at 1-2 (stating that the facility where Mr. Spikes was housed is "a contract facility owned and operated by private company The GEO Group, Inc. ("GEO"), to house detainees in the custody of the United States government"); Docket No. 97 at 4 (stating that "GEO has been contracted by the [United States] Marshalls [sic]").

the Denver Police Department," who "utilized the information passed to him . . . to provide information to the prosecution."[3]  *Id.* at 11, ¶¶ 90-91 (footnote added).  "The prosecution team, unknowingly, used attorney client privileged information to be a step ahead of Plaintiff Spikes & Montoya's defense teams."  *Id.* at 12, ¶ 107.  In addition, plaintiffs allege that Ms. Dolan visited Mr. Spikes repeatedly in prison and asked him about his criminal case and relationship with Ms. Montoya.  *Id.* at 11, ¶¶ 88-89.

Plaintiffs' complaint brings two claims: claim one, negligence against defendant Car Toys, Inc. based on allegations concerning a search of Mr. Spikes' vehicle by the Denver Police Department; and claim two, violation of the Fourth and Fourteenth Amendment brought against GEO and Ms. Dolan under 42 U.S.C. § 1983.  *Id.* at 11-13, ¶¶ 93-116.

On October 5, 2023, GEO filed a motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  Docket No. 90.  Plaintiffs responded, Docket No. 97, and GEO replied.  Docket No. 101.  On November 22, 2023, Ms. Dolan joined GEO's motion to dismiss, stating that "GEO's argument applies with equal force to Defendant Dolan because she was a GEO employee at the time of the incident that forms the basis of Plaintiffs' Second Amended Complaint."  Docket No. 102 at 1.  Plaintiffs filed an objection to Ms. Dolan's motion, arguing that the Court should not dismiss plaintiffs' claim against Ms. Dolan based on the arguments raised GEO's motion to dismiss. Docket No. 109 at 1-3.

---

[3] The complaint does not state whether "the prosecution" refers to the prosecution in Case No. 19-cr-00264-WJM or some other criminal case.

II.   **LEGAL STANDARD**

To survive a motion to dismiss under Rule 12(b)(6)[4] of the Federal Rules of Civil Procedure, a complaint must allege enough factual matter that, taken as true, makes the plaintiff's "claim to relief . . . plausible on its face." *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "The 'plausibility' standard requires that relief must plausibly follow from the facts alleged, not that the facts themselves be plausible." *RE/MAX, LLC v. Quicken Loans Inc.*, 295 F. Supp. 3d 1163, 1168 (D. Colo. 2018) (citing *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008)). Generally, "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Twombly*, 550 U.S. at 555) (alterations omitted). A court, however, does not need to accept conclusory allegations. *See, e.g.*, *Hackford v. Babbit*, 14 F.3d 1457, 1465 (10th Cir. 1994) ("we are not bound by conclusory allegations, unwarranted inferences, or legal conclusions.").

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that

---

[4] GEO's motion argues for dismissal under both Rule 12(b)(1) and Rule 12(b)(6). Docket No. 90 at 4-5. However, GEO's main argument—that plaintiffs may not maintain a claim against GEO pursuant to 42 U.S.C. § 1983 because GEO is not a state actor—is properly raised under Rule 12(b)(6), not Rule 12(b)(1). *See Mehdipour v. Matthews*, 386 F. App'x 775, 778 n.3 (10th Cir. 2010) (unpublished) ("If, however, jurisdiction is alleged under 28 U.S.C. § 1331, the failure to properly allege a 'state action' warrants dismissal pursuant to Fed. R. Civ. P. 12(b)(6), rather than pursuant to Fed. R. Civ. P. 12(b)(1)) (citing *Elliot v. Chrysler Fin.*, 149 F. App'x 766, 768-69 (10th Cir. 2005) (unpublished); *West v. Atkins*, 487 U.S. 42, 48 (1988)). GEO raises no other argument as to why the Court lacks subject matter jurisdiction over this case. For these reasons, the Court will focus on the part of GEO's motion brought under Rule 12(b)(6).

the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quotations and alterations omitted); *see also Khalik*, 671 F.3d at 1190 ("A plaintiff must nudge [his] claims across the line from conceivable to plausible in order to survive a motion to dismiss." (quoting *Twombly*, 550 U.S. at 570)).  If a complaint's allegations are "so general that they encompass a wide swath of conduct, much of it innocent," then plaintiff has not stated a plausible claim.  *Khalik*, 671 F.3d at 1191 (quotations omitted). Thus, even though modern rules of pleading are somewhat forgiving, "a complaint still must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory."  *Bryson*, 534 F.3d at 1286 (alterations omitted).

III.   **ANALYSIS**

A.  <u>**Request to Stay Ruling**</u>

Plaintiffs' response to GEO's motion to dismiss asks the Court to "hold in abeyance ruling on this motion until at least limited discovery would allow some of the contended [sic] allegations to be resolved" because "this issue isn't ripe."  Docket No. 97 at 6.  However, plaintiffs' request, insofar as it constitutes a motion to stay ruling on GEO's motion to dismiss, does not comply with the Local Rules, which provide that a motion "shall not be included in a response or reply to the original motion," but must instead "be filed as a separate document."  D.C.COLO.LCivR 7.1(d); *see also LS3 Inc. v. Cherokee Fed. Sols. L.L.C.,* No. 20-cv-03555-PAB-NYW, 2021 WL 4947284, at *2 (D. Colo. Aug. 26, 2021) ("this court notes that it does not typically stay cases without formal motions").  Moreover, discovery is currently stayed in this case until the Court determines whether it has subject matter jurisdiction over this action, Docket No. 119 at

5-6, and plaintiffs have not moved to conduct limited discovery.  Therefore, the Court will not stay its decision on GEO's motion.

### B.  Allegations against GEO

"Under Section 1983, liability attaches only to conduct occurring 'under color of law.'  Thus, under the state action doctrine, a proper defendant in a § 1983 action is one who represents the state in some capacity."  *Schwab v. Kansas Dep't of Child. & Fams.*, 851 F. App'x 110, 117 (10th Cir. 2021) (unpublished) (citations omitted).  GEO argues that it is not a state actor and, because Mr. Spikes[5] "was a detainee in the custody of the United States Marshals Service, a federal law enforcement agency, he may not maintain his claim pursuant to 42 U.S.C. § 1983."  Docket No. 90 at 5.

The complaint alleges that, on May 23, 2019, Mr. Spikes was indicted and arrested in connection with a federal criminal case, that Mr. Spikes was housed in custody at a facility owned and operated by GEO, and that, while Mr. Spikes was at the facility, GEO employees recorded and disclosed confidential communications between Mr. Spikes and his attorney to the U.S. Department of Justice.  Docket No. 86 at 7-9, ¶¶ 56, 61, 75-76.  Thus, on the face of the complaint, Mr. Spikes was a federal detainee housed at the GEO facility and the alleged disclosure of communications with his attorney related to Mr. Spikes' federal criminal case.

---

[5] GEO states that it is "unable to ascertain what, if any claims [Ms. Montoya] asserts against it."  Docket No. 90 at 2 n.2.  Plaintiffs' claim against GEO appears to be based on the alleged interception, use, and disclosure of communications between Mr. Spikes and his attorney while he was housed at GEO and relates to Ms. Montoya only insofar as the complaint alleges that prosecutors used information from these communications "to be a step ahead" of her defense team.  Docket No. 86 at 11-13, ¶¶ 97-116.

Although the Tenth Circuit has not considered this issue, other courts have held that a plaintiff may not bring § 1983 claims against a state or private facility where he was held as a federal prisoner because such claims allege federal, not state, action. *See Sandoval v. Wackenhut Correctional Corp.*, 21 F.3d 1109, 1994 WL 171703, at *2 n.3 (5th Cir. 1994) (unpublished) ("Because Sandoval was a federal prisoner in the facility, which Wackenhut was under contract with the federal government to operate, his claims cannot be based on § 1983, because no state action was involved."); *Varma v. Federal Bureau of Prisons*, 420 F. App'x 183, 186 (3rd Cir. 2011) (unpublished) (holding that federal prisoner challenging conditions in a private correctional facility failed to state a claim under § 1983 because none of the defendants were alleged to have acted under state law); *Lewis v. Downey*, 581 F.3d 467, 471 n.3 (7th Cir. 2009) ("A county employee caring for federal prisoners arguably becomes a *federal* actor, rather than the requisite *state* actor, rendering § 1983 inapplicable."); *cf. Alba v. Montford*, 517 F.3d 1249, 1251 (11th Cir. 2008) (noting the magistrate judge had declined to analyze federal prisoner's claim against private detention facility under § 1983 because § 1983 "provides a right of action to remedy unconstitutional state, not federal, conduct"); *Manuel v. Hanson*, 2022 WL 405258, at *2 (W.D. Okla. Feb. 9, 2022); *Valdovinos-Blanco v. Vaughn*, 2012 WL 13076554, at *3 (D.N.M. Apr. 12, 2012); *see also Wilkinson v. Dotson*, 544 U.S. 74, 87 (2005) (Scalia, J., concurring) ("federal prisoners['] . . . custodians are not acting under color of state law and hence cannot be sued under § 1983").

In *Johnson v. Rodrigues*, 293 F.3d 1196, 1202-05 (10th Cir. 2002), the Tenth Circuit discussed four tests used to determine whether private parties should be

deemed state actors: (1) the public function test; (2) the nexus test; (3) the symbiotic relationship test; and (4) the joint action test.  Plaintiffs argue that GEO is a state actor based on all four tests.  Docket No. 97 at 3-5.

"The public function test consists of determining whether the state has delegated to a private party 'a function traditionally exclusively reserved to the States.'"  *Johnson*, 293 F.3d at 1203 (quoting *Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442, 1456 (10th Cir. 1995)).  Plaintiffs argue that "GEO is a private contractor that is fulfilling a traditionally exclusive prerogative of the state in the form of incarceration of an individual."  Docket No. 97 at 3.  However, the complaint contains no allegations that a state, rather than a federal, government actor delegated to GEO the function of incarcerating Mr. Spikes.  Therefore, the complaint fails to allege state action based on the public function test.

"Under the nexus test, a plaintiff must demonstrate that there is a sufficiently close nexus between the government and the challenged conduct such that the conduct 'may be fairly treated as that of the State itself."  *Johnson*, 293 F.3d at 1203 (quoting *Gallagher*, 49 F.3d at 1448) (internal quotations omitted).  "Under this approach, a state normally can be held responsible for a private decision 'only when it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State.'"  *Gallagher*, 49 F.3d at 1448 (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982)).  Plaintiffs argue that "there were multiple GEO employees and multiple instances where GEO provides [sic] privileged information overtly to federal agents" and "instances where Co-Defendant

Dolan provided privileged information to state agents such as Sgt. Foster."[6]  Docket No. 97 at 3-4.  Although the complaint alleges that Ms. Ceja "provided to the U.S. Department of Justice a report of all calls between Plaintiff Spikes and his defense attorney" and that Mr. Jones "provided three attorney client privileged recorded phone calls . . . between Plaintiff Spikes and his defense attorney to the U.S. Department of Justice,"  Docket No. 86 at 9, ¶¶ 75-76, it does not allege that any state official coerced or encouraged these employees to do so.  Similarly, the complaint alleges that Ms. Dolan "passed information she obtained from the attorney client privileged phone calls" to Sergeant Foster, *id.* at 11, ¶ 90, but it does not allege that Sergeant Foster—or any state official—encouraged Ms. Dolan to do so or exercised coercive power over her.[7]  Therefore, the complaint fails to allege state action based on the nexus test.

"Under the analysis referred to as the 'symbiotic relationship test,' the state must have 'so far insinuated itself into a position of interdependence with a private party that it must be recognized as a joint participant in the challenged activity.'"  *Johnson*, 293 F.3d at 1204 (quoting *Gallagher*, 49 F.3d at 1451).  Plaintiffs argue that GEO is a state

---

[6] Plaintiffs' response also argues that the nexus test is satisfied because Ms. Dolan provided privileged information to "other state case agents likely through Foster" and that Ms. Dolan and Sergeant Foster provided false affidavits in Case No. 19-cr-00264-WJM. Docket No. 97 at 4.  However, the Court will not consider these allegations because they are not included in the complaint and plaintiffs may not amend their complaint through their response to a motion to dismiss.  *See Abdulina v. Eberl's Temp. Servs., Inc.*, 79 F. Supp. 3d 1201, 1206 (D. Colo. 2015) (citing *Jojola v. Chavez*, 55 F.3d 488, 494 (10th Cir. 1995)).  Moreover, even if the Court were to consider them, they would fail to establish state action under the nexus test for the reasons discussed above.

[7] Moreover, the complaint does not allege that GEO played any part in Ms. Ceja, Mr. Jones, or Ms. Dolan providing privileged information to the department of justice or Sergeant Foster and § 1983 "does not impose liability 'based on a *respondeat superior* theory of liability.'"  *Ames v. Miller*, 247 F. App'x 131, 134 (10th Cir. 2007) (unpublished) (quoting *Polk Cnty v. Dodson*, 454 U.S. 312, 325 (1981)).

actor under the symbiotic relationship test because "GEO has been contracted by the [United States] Marshalls [sic] to fulfil a state function."[8]  Docket No. 97 at 4.  However, the complaint contains no allegations that GEO has been contracted by a state to fulfill a state function.[9]  Therefore, the complaint fails to allege state action based on the symbiotic relationship test.

"Under the joint action test, 'state action is also present if a private party is a willful participant in joint action with the State or its agents.'"  *Johnson*, 293 F.3d at 1205 (quoting *Gallagher*, 49 F.3d at 1453).  The Tenth Circuit has "consistently held that furnishing information to law enforcement officers, without more, does not constitute joint action under color of state law. . . .  Rather, joint action arises only when an officer's decision to initiate an arrest or a prosecution was not independent of a private party's influence."  *Schaffer v. Salt Lake City Corp.*, 814 F.3d 1151, 1157 (10th Cir. 2016).  Plaintiffs argue that GEO is a state actor under the joint action test because "Co-Defendant Dolan was an employee at GEO [sic] she used her access to both Spikes and his attorney calls to provide this information to her husband Sgt. Foster the lead detective on Spikes [sic] case."[10]  Docket No. 97 at 5.  Although the complaint alleges that Ms. Dolan furnished information to Sergeant Foster, it does not allege that

---

[8] Plaintiffs' response claims that "GEO provided materials at ATF/FBI request," Docket No. 97 at 4, but the Court will not consider this allegation because it was not included in the complaint.  *See Abdulina*, 79 F. Supp. 3d at 1206.

[9] As the Court noted earlier, GEO operates under a contract with the federal, not state government.  Moreover, even if GEO were a facility operated by the State of Colorado, plaintiffs could not bring a claim pursuant to § 1983 against it because Mr. Spikes was a federal prisoner.  *See Lewis*, 581 F.3d at 471 n.3.

[10] Plaintiffs' response claims that "privileged communication was provided to the government" by a GEO employee named Tejada, Docket No. 97 at 5, but the Court will not consider this allegation because it was not included in the complaint.

Sergeant Foster initiated an arrest or prosecution as a result of her influence—nor could it since Mr. Spikes had already been arrested and prosecution was underway at the time Ms. Dolan furnished the information to Sergeant Foster.[11]  *See* Docket No. 86 at 6, 11, ¶¶ 43, 90-91.  Thus, the complaint fails to allege state action based on the joint action test.

The Court finds that plaintiffs have failed to plausibly allege state action and have thus failed to state a § 1983 claim against GEO.  *See Schwab,* 851 F. App'x at 117.  The Court will dismiss plaintiffs' second cause of action against GEO with prejudice.[12]

### C. Allegations against Ms. Dolan

Ms. Dolan "joins in GEO's state actor argument," claiming that, since GEO was not a state actor, Ms. Dolan was also not a state actor because she was a GEO employee at the time of the incident that forms the basis of the complaint.  Docket No. 102 at 1.  However, whether a defendant's conduct constitutes state action depends not

---

[11] The allegation that Ms. Dolan passed information obtained from attorney client privileged phone calls to Sergeant Foster also fails to plead joint action based on the "conspiracy approach," under which "the 'public and private actors [must] share a common, unconstitutional goal,'" because the complaint does not allege that Sergeant Foster knew that the information Ms. Dolan provided came from attorney client privileged phone calls.  *See Schaffer*, 814 F.3d 1157 (quoting *Gallagher*, 49 F.3d at 1454).

[12] GEO states that plaintiffs' § 1983 claim "is more appropriately construed as one pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971)."  Docket No. 90 at 6.  Although courts have construed federal prisoners' § 1983 claims against privately operated prisons as *Bivens* claims, *see, e.g. Alba*, 517 F.3d at 1251, the plaintiffs in those cases were proceeding pro se, and the courts therefore had the obligation to construe the plaintiffs' pleadings liberally.  *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  Here, plaintiffs are represented by counsel and the Court is under no such obligation.  Moreover, plaintiffs do not ask the Court to construe their § 1983 claim as a *Bivens* claim and do not raise any argument that they have stated a claim under *Bivens*.  Therefore, the Court will not construe plaintiffs' second cause of action as a *Bivens* claim.

on whether she was employed by a state actor, but whether her conduct is "fairly attributable to the State" based on one of the tests described in *Johnson*. *See Gallagher*, 49 F.3d at 1447; *see also Johnson*, 293 F.3d at 1202-05. Plaintiffs argue that "Ms. Dolan was and is a state actor by way of her actions and conspiracy with Sgt. Foster and APD officers working on the Spikes case," and that "the actions of Ms. Dolan, viewed under the Public Function Test and Nexus Test," indicate that she was a state actor. Docket No. 109 at 2; *see Johnson*, 293 F.3d at 1202.

Under the public function test, a private party is a state actor if the state delegates to it a function "traditionally exclusively reserved to the State." *Gallagher,* 49 F.3d at 1456. Here, the complaint does not allege that a state actor delegated any function to Ms. Dolan. Therefore, plaintiffs have failed to plead that Ms. Dolan was a state actor based on the public function test.

As discussed above, although the complaint alleges that Ms. Dolan passed information from privileged phone calls to Sergeant Foster, Docket No. 86 at 11, ¶ 90, it does not allege that any state official encouraged or coerced her to do so. Therefore, the complaint fails to allege that Ms. Dolan is a state actor based on the nexus test. *See Gallagher*, 49 F.3d at 1456.

The Court finds that plaintiffs have failed to plausibly allege state action and have thus failed to state a § 1983 claim against Ms. Dolan. *See Schwab,* 851 F. App'x at 117. The Court will dismiss plaintiffs' second cause of action against Ms. Dolan with prejudice.

### D.  Plaintiffs' Negligence Claim Against Car Toys, Inc.

In a case where a plaintiff brings both federal and state law claims, "if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966); *see also Smith v. City of Enid ex rel. Enid City Comm'n*, 149 F.3d 1151, 1156 (10th Cir. 1998) ("When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims."); 28 U.S.C. § 1367(c)(3) (permitting a district court to decline supplemental jurisdiction over a state law claim if "the district court has dismissed all claims over which it has original jurisdiction").

In the Tenth Circuit, when "the district court has dismissed all claims over which it has original jurisdiction," 28 U.S.C. § 1367(c)(3), courts must dismiss pendent state law claims without prejudice "absent compelling reasons to the contrary." *Brooks v. Gaenzle,* 614 F.3d 1213, 1230 (10th Cir. 2010) (quoting *Ball v. Renner,* 54 F.3d 664, 669 (10th Cir. 1995) (reversing the district court's grant of summary judgment on state law claims), *abrogated on other grounds by Torres v. Madrid*, 141. S. Ct. 989 (2021)); *Endris v. Sheridan Cnty. Police Dep't,* 415 F. App'x 34, 36 (10th Cir. 2011) (unpublished) ("any state-law claims for assault and battery or mental and emotional injury were inappropriate subjects for the exercise of pendent jurisdiction where all federal claims had been dismissed.") (footnote omitted).  Here, plaintiffs' complaint asserts that the Court has jurisdiction over their § 1983 claim pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over their state law claim pursuant to 28 U.S.C.

13

§ 1367.  Docket No. 86 at 1, ¶¶ 1-2.  Because the Court will dismiss plaintiffs' federal claim, it declines to exercise jurisdiction over their state claim.

## IV.   CONCLUSION

Therefore, it is

**ORDERED** that Motion to Dismiss on Behalf of Defendant GEO Secure Services, LLC [Docket No. 90] is **GRANTED**.  It is further

**ORDERED** that Car Toys, Inc.'s Motion to Dismiss Plaintiffs' Second Amended Complaint [Docket No. 89] is **DENIED as moot**.  It is further

**ORDERED** that plaintiffs' first cause of action is **DISMISSED without prejudice**.[13]  It is further

**ORDERED** that plaintiffs' second cause of action is **DISMISSED with prejudice**.[14]  It is further

---

[13] Under Colo. Rev. Stat. § 13-80-111(1), if claims are properly commenced within the statute of limitations and involuntarily dismissed because of lack of jurisdiction, the plaintiff "may commence a new action upon the same cause of action within ninety days after the termination of the original action or within the period otherwise allowed by this article, whichever is later."  *See also Artis v. D.C.*, 583 U.S. 71, 74-75 (2018) (holding that 28 U.S.C. § 1367(d) tolls the statute of limitations for state law claims asserted under § 1367(a) during the pendency of the federal litigation in which such claims are brought and for thirty days following involuntary dismissal of those claims on jurisdictional grounds).

[14] Under Tenth Circuit precedent, dismissal with prejudice is appropriate "where it is obvious that the plaintiff cannot prevail on the facts he has alleged and it would be futile to give him an opportunity to amend."  *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001) (quoting *Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803, 806 (10th Cir. 1999)).  Here, plaintiffs have amended their complaint twice, *see* Docket Nos. 48, 86, but have not requested leave to file a third amended complaint.  The Court finds that plaintiffs' second cause of action should be dismissed with prejudice because granting plaintiffs leave to amend their complaint for a third time with respect to this claim would be futile.

**ORDERED** that this case is closed.

DATED September 10, 2024.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge